PRO–FOOTBALL, INC., Plaintiff,

v.

Amanda BLACKHORSE,
et al., Defendants.

Case No. 1:14–cv–01043–GBL–IDD.

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed Nov. 25, 2014.

Craig Crandall Reilly, Law Office of Craig C. Reilly, Alexandria, VA, for Plaintiff.

Jesse Witten, Jeffrey Joseph Lopez, Adam Scott Kunz, Jennifer Tracey Criss, Tore Thomas DeBella, II, Drinker, Biddle & Reath LLP, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

This matter is before the Court on Defendants Amanda Blackhorse, Marcus

Briggs–Cloud, Philip Grover, Jillian Pappan and Courtney Tsotigh's ("Defendants") Motion to Dismiss (Doc. 18). This action involves a review of the Trademark Trial and Appeal Board ("TTAB")'s cancellation of Plaintiff Pro–Football Inc. ("Pro–Football")'s REDSKINS trademarks on the grounds that they are scandalous, disparaging, and may bring Native Americans into contempt or disrepute in violation of the Lanham Act. Defendants move to dismiss the Complaint. Specifically, Defendants allege that there is no judicially cognizable dispute between them and Pro–Football because Defendants do not have a direct stake in the outcome of the case. Further, Defendants allege that they are not "parties in interest" because they have no actual economic or legal interest in the marks. The issues before the Court are (i) whether a "case or controversy" exists between Pro–Football and Defendants and (ii) whether Defendants constitute "parties in interest" under 15 U.S.C. § 1071 giving the Court subject matter jurisdiction over the case.

The Court denies Defendants' Motion to Dismiss for four reasons. First, the legitimate interests of the parties in the registration, or cancellation, of the mark are sufficient to establish jurisdiction under Article III of the Constitution. Second, 15 U.S.C. § 1071 provides review of a TTAB's decision in the Federal Circuit or a United States District Court, and the alleged harm or controversies decided in such administrative proceedings must carry over into the review of the proceeding. Third, Defendants' cancellation petition demonstrated that they have a sufficient interest in the registration to constitute § 1071 "adverse parties" and "parties in interest." Finally, the prior proceeding before the TTAB was an inter partes proceeding where Defendants were the sole adverse parties. Therefore, the Court finds that a judicially cognizable dispute exists between Pro–Football and Defendants and 15 U.S.C. § 1071 provides the Court with jurisdiction over this case.

## I. BACKGROUND

The team name, "REDSKINS" has been a part of the National Football League franchise for over eighty years. (Doc. 1 at 10.) George Preston purchased the team now known as the REDSKINS in 1932. (*Id.*) When the team adopted the name REDSKINS, there were four players on the team that identified as Native Americans. (*Id.* at 11.) Since 1933, the REDSKINS marks have had a longstanding fame and recognition within the industry and amongst the public. (*Id.*) This recognition is evidenced by the team following through various media outlets and widely sold team paraphernalia. (*Id.*) As a result, the REDSKINS marks are valuable communicative symbols through which the public identifies the team and its players. (*Id.* at 12.)

## II. PROCEDURAL HISTORY

In September 1992, a group of Native American Defendants filed a petition with the TTAB to cancel the REDSKINS marks on the grounds that they are scandalous, may disparage Native Americans, and may bring Native Americans into contempt or disrepute in violation of the Lanham Act. (Doc. 1 at 6.) On April 2, 1999, the Board canceled the federal registrations for the REDSKINS marks. *See Harjo v. Pro–Football Inc.*, 1999 WL 375907, at *38–48 (T.T.A.B.1999). However, the United States District Court for the District of Columbia on September 30, 2003 reversed the TTAB decision because there was insufficient evidence to support the Board's findings. (Doc. 1 at 6–7.) The D.C. Circuit remanded the case back to the district court to determine the facts surrounding the laches defense on July 15,

2005. On August 11, 2006, Defendants filed a petition with the TTAB to cancel the federal registration of the REDSKINS marks on the same grounds as the *Harjo* petitioners. (*Id.* at 7.)

On September 26, 2006, Pro–Football filed an answer denying all allegations. (*Id.* at 8.) Two days later, the Board decided to suspend the proceedings in *Blackhorse* pending the final disposition of the *Harjo* case. (*Id.*) The *Harjo* court ruled in favor of Pro–Football on June 25, 2008 based on the laches defense on the grounds that the youngest plaintiff improperly delayed its petition for cancellation. The D.C. Circuit upheld this decision, and the United States Supreme Court denied certiorari on November 16, 2009. (*Id.*)

The *Blackhorse* proceedings resumed in March 2010. (*Id.*) By interlocutory order, the TTAB decided that it was not empowered to entertain Pro–Football's constitutional defenses. (*Id.* at 9.) The Board also made the following rulings: (1) disparagement is measured by a substantial composite of the targeted group and not the public; (2) the time frame for assessing disparagement is the date of issuance of the registration; (3) the standard of proof is preponderance of the evidence; and (4) the operative date for calculating laches is the registration date and the court's inquiry must balance the reasonableness of the delay with the resulting harm. (*Id.* at 10.)

On June 18, 2014, the TTAB issued a decision scheduling the cancellation of the registrations for the REDSKINS marks finding that a "substantial composite of Native Americans found the term REDSKINS to be disparaging" during the requisite time frame. (*Id.*)

On August 8, 2014, Pro–Football filed a Complaint against Defendants before this Court seeking a *de novo* judicial review of the final TTAB decision. (Doc. 1.) The Complaint consists of the following causes of action:

1. **Declaration of Non–Disparagement:** Requests a review of the TTAB's ruling that the REDSKINS marks disparage Native Americans in violation of Section 2(a) of the Lanham Act.

2. **Declaration of Non–Contempt or Disrepute:** Requests a review of the TTAB's ruling that Pro–Football's REDSKINS marks bring Native Americans into contempt or disrepute in violation of § 1052(a).

3. **Declaration that Section 2(a) of the Lanham Act Violates the First Amendment:** Requests an analysis as to whether Section 2(a) violates the First Amendment, a legal determination that was not considered by the TTAB.

4. **Declaration that Section 2(a) of the Lanham Act is Void for Vagueness:** Requests an analysis as to whether Section 2(a) is unconstitutionally void for vagueness.

5. **Declaration that the TTAB Order Violates the Due Process Clause of the Fifth Amendment:** Requests a determination that the TTAB's Order to cancel the REDSKINS marks violates Pro–Football's Fifth Amendment rights by depriving Pro–Football of long-held property rights.

6. **Declaration that the TTAB Order Violates the Takings Clause of the Fifth Amendment:** Requests a determination that the TTAB's Order to cancel the REDSKINS marks violates the Taking Clause of the Fifth Amendment because it unconstitutionally takes Pro–Football's property without just compensation.

7. **Declaration that Defendant's Petition Was Barred by the Doctrine of Laches:** Requests a determination that Defendants' petition before the TTAB was barred by the doctrine of laches.

(*Id.* at 32–34.)

Defendants filed their Motion to Dismiss on September 22, 2014. (Doc. 18.) Pro–Football filed its Opposition on October 3, 2014, (Doc. 25), and Defendants filed their Reply on October 9, 2014, (Doc. 27–28.) The Court held a hearing on October 31, 2014.

## III. STANDARD OF REVIEW

██ Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. FED.R.CIV.P. 12(b)(1). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). There are two ways in which a defendant may present a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. In such a case, all facts as alleged by the plaintiff are assumed to be true. *Id.*

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Constr. Co.*, 947 F.Supp. 231, 233 (E.D.Va.1996). In such a case, the trial court's "very power to hear the case" is at issue. *Mortensen*, 549 F.2d at 891. The district court is then free to weigh the evidence to determine the existence of jurisdiction. *Adams*, 697 F.2d at 1219. "No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

██ Section 1071(b) of the Lanham Act "permits a party in a trademark suit to initiate a civil action in the place of an appeal of the TTAB's determination to the Federal Circuit." *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir.2014). The district court will act as a finder of fact and will review the TTAB record in addition to new evidence brought before the court de novo. *See Id.* (citing 15 U.S.C. § 1071(b); *Durox Co. v. Duron Paint Mfg. Co.*, 320 F.2d 882, 883–84 (4th Cir.1963)). Independent of the PTO's decision, the district court has authority to grant or cancel trademark registrations and may decide any related matters. *See Swatch*, 739 F.3d at 155.

Here, Defendants request that the Court grant their Motion to Dismiss Pro–Football's complaint brought under 15 U.S.C. § 1071(b). Accordingly, the overarching issue is whether, considering the entire record and drawing all reasonable inferences in Pro–Football's favor, the Court should grant Defendants' Motion to Dismiss because Pro–Football cannot bring an action against Defendants who have no commercial interest in the mark under § 1071(b) of the Lanham Act.

## IV. ANALYSIS

The Court DENIES Defendants' Motion to Dismiss Pro–Football's Complaint be-

cause 15 U.S.C. § 1071(b) plainly affords this Court with Article III jurisdiction over the case and all parties in the case to review and receive new evidence on the TTAB decision.

## A. Background on 15 U.S.C. § 1071

The suit before this Court is brought under 15 U.S.C. § 1071, which provides that any "party to ... a [trademark] cancellation proceeding ... who is dissatisfied with the decision of the Director or Trademark Trial and Appeal Board," may contest this decision in one of two ways. First, the party may "appeal to the United States Court of Appeals for the Federal Circuit." § 1071(a)(1). The Federal Circuit "shall review the decision from which the appeal is taken on the record before the United States Patent and Trademark Office." § 1071(a)(4). Put another way, the Federal Circuit "is limited to the record before the TTAB" when reviewing the case. *See Swatch v. Beehive Wholesale, LLC,* 888 F.Supp.2d 738, 745 (E.D.Va. 2012) (quoting J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 21:20 (4th ed.2013) (hereinafter, "McCarthy")).

Second, the party "may ... [seek] remedy by a civil action" by filing in a United States district court. § 1071(b)(1). The Court "may adjudge that an applicant is entitled to a registration upon the application involved, that a registration should be canceled, or such other matters as the issues in the proceeding require." § 1071(b)(1). "[A] civil action in district court affords 'litigants the option of producing new evidence in a trial court.'" *See Swatch,* 888 F.Supp.2d at 745 (quoting McCarthy § 21.20). Remedy by civil action is available to "a person authorized by subsection (a) of this section to appeal to the [Federal Circuit] ... unless appeal has

been taken to said [Federal Circuit]." § 1071(b)(1).

Congress has amended the Lanham Act many times since its enactment in 1946. As a result, the relevant language of § 1071 is different today from its original construction. The Lanham Act has always provided that an applicant for the registration of a mark and a party to an interference proceeding, opposition proceeding, cancellation proceeding or a party to an application to register as a lawful concurrent user who is unsatisfied with a decision regarding a mark may appeal. 15 U.S.C. § 1071(a); Ch. 540, 66 Stat. 435 (July 5, 1946). In 1946, Section 21 of Title I read as follows:

> The Commissioner of Patents **shall not be a necessary party** to an inter partes proceeding under Revised Statutes 4915, but he shall be notified of the filing of the bill by the clerk of the court in which it is filed and the Commissioner shall have the right to intervene in the action.

*Id.* (emphasis added). Between the enactment of the Lanham Act in 1946 and the 1962 amendment that enacted the language of today's 15 U.S.C. § 1071, the Patent Act was amended. The 1952 amendment to the Patent Act laid out the modern structure of patent law; it also delineated 35 U.S.C. § 145 and § 146, which mirror the language of 15 U.S.C. § 1071(a) and (b). Referencing civil actions in the case of a patent interference, the 1952 Patent Act Amendment provided in part:

> Such suit may be instituted against the party in interest as shown by the records of the Patent Office at the time the decision complained of, but any party in interest may become a party to the action The Commissioner **shall not be a necessary party** but he shall be notified of the filing of the suit by the clerk of

the court in which it is filed and shall have the right to intervene.

35 U.S.C. § 146 (emphasis added); Pub.L. 82–593, *66* Stat. 792 at 803 (July 19, 1952). Ten years later, the Lanham Act amendment of 1962 reflected the language of today's 15 U.S.C. § 1071. In reference to remedy by civil action, the statute provides:

> The Director ***shall not be made a party*** to an inter partes proceeding under this subsection.... Where there is an adverse party, such suit may be instituted against the party in interest as shown by the records of the [USPTO] at the time of the decision complained of, but any party in interest may become a party to the action.

15 U.S.C. § 1071(b)(2) and (4) (emphasis added); Pub.L. 87–772, 76 Stat. 771. The language of the current Patent Act still provides that the Commissioner shall not be a necessary party.

Defendants contest the Court's Article III jurisdiction over this case on substantive grounds. Accordingly, this Court is free to weigh the evidence to determine the existence of jurisdiction over the claims. *See Adams,* 697 F.2d at 1219. This Court has Article III jurisdiction over this case and all of its parties for three reasons. First, § 1071(b) provides this Court with statutory jurisdiction over a TTAB determination. Second, the case before this Court is an inter partes proceeding. Third, Defendants' meritorious petition and participation in the TTAB proceeding demonstrates that they are parties in interest pursuant to § 1071(b).

### B. Article III Case or Controversy

■ Defendants recognize that § 1071(b) provides this Court with statutory jurisdiction to hear this action. Nonetheless, Defendants contend that Pro–Football's dispute is with the USPTO and not them; and therefore, there is no "case or controversy" for this Court to exercise jurisdiction under Article III of the Constitution. (Doc. 19 at 14.) The Court rejects this assertion and finds that there is a sufficient case or controversy between Defendants and Pro–Football for two reasons. First, Pro–Football's successful petition for cancellation sufficiently constitutes Article III standing. Second, Defendants' personal stake in the outcome of this case sufficiently establishes a case or controversy between the parties.

■ First, Defendants have demonstrated standing to bring the petition for cancellation before the TTAB. Defendants standing before the TTAB necessarily establishes sufficient interest in an appeal or review of the TTAB's determination of the petition. *See Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.,* 823 F.2d 490, 492 (Fed.Cir.1987) (recognizing that requisite standing to file petition to oppose trademark registration "is in harmony with the standing requirements for maintaining a law suit in an Article III Court"). Sufficient standing before the TTAB requires the petition to demonstrate a real interest in the outcome of the case and a reasonable belief that the mark has caused or will cause damage to the petitioner. *See Ritchie v. Simpson,* 170 F.3d 1092, 1095 (Fed. Cir.1999).

■ Second, a personal stake in the outcome of a case constitutes a sufficient case or controversy. *See Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972) (recognizing a sufficient "case" or "controversy" where a party has "a personal stake in the outcome of the controversy as to ensure that the dispute sought to be adjudicated will be presented in an adversary context ... capable of judicial resolution"); *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S.

269, 128 S.Ct. 2531, 2543, 171 L.Ed.2d 424 (2008) (recognizing a personal stake, and Article III standing, "are flip sides of the same coin" that are "different descriptions of the same judicial effort").

 Further, a litigant who seeks remedy for an administrative decision only needs to demonstrate injury to warrant Article III jurisdiction. *See Consumer Watchdog v. Wis. Alumni Research Found.*, 753 F.3d 1258, 1261 (Fed.Cir.2014) (citing *Mass. v. E.P.A.*, 549 U.S. 497, 517–518, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007)). "[W]here Congress has accorded a procedural right to a litigant, such as the right to appeal an administrative decision," the "immediacy and redressability" requirements of Article III justiciability are "relaxed." *See Id.*

. The TTAB initiated a cancellation proceeding in response to Defendants' petition for cancellation of the REDSKINS marks. By proceeding with the cancellation proceeding, the TTAB recognized that Defendants had standing before the TTAB. The TTAB's recognition of Defendants' standing necessarily means that Defendants sufficiently demonstrated that they have a real interest in the outcome of the case and a reasonable belief that the mark has caused them harm. Because sufficient standing before the TTAB implicates sufficient Article III standing of an appeal or review of a TTAB's determination, this Court finds that Pro–Football has standing before this Court to review the TTAB's cancellation of its REDSKINS marks.

There is no dispute that Pro–Football will be injured by the cancellation of the marks. Therefore, it is undisputed that Pro–Football has a personal stake in the outcome of the case sufficient to establish Article III jurisdiction. Defendants, however, assert that despite Pro–Football's stake in the outcome, there is no case or controversy in this case because Defendants do not have a personal stake in this case. Defendants rely on *Watchdog*, to support their assertion.

In *Watchdog*, a consumer group appealed the Patent Trial and Appeal Board's determination that the subject matter of the claimed invention, was patent eligible. *See id.* at 1259. The Federal Circuit dismissed the appeal for lack of jurisdiction, finding that the plaintiffs had no standing to appeal because the plaintiffs did not engage in activity involving the claimed subject matter and therefore had no "particularized, concrete stake in the outcome of the reexamination". *See id.* at 1261–63.

*Watchdog* is distinguishable from the instant case because Defendants in this action allege, and the TTAB found, that each Defendant has a "personal stake in the outcome" of the TTAB proceeding. Order at *7. As was previously stated, the TTAB's decision to proceed with the cancellation proceeding necessarily recognizes Defendants' personal stake in the outcome of the case. Further, a reversal of the TTAB decision and dismissal of Defendants' petition will cause them injury. Defendants' professed interest in the cancellation of the registrations and Pro–Football's interest in the reversal of these cancellations demonstrate that each party has a "personal stake" in this case to guarantee the issues before this Court will be presented in an adversarial context capable of judicial resolution. Accordingly, Defendants' Motion to Dismiss is DENIED.

### C. Applicability of § 1071 to Defendants

 Defendants recognize that § 1071(b) provides this Court with statutory jurisdiction to hear this action. However, Defendants contend that a case under § 1071 cannot be brought against them

because they have not used the REDS-KINS marks and therefore they do not have a legal or economic interest in the marks to constitute them as "parties in interest." The Court rejects this assertion and finds that Pro–Football properly brought this suit under § 1071 against Defendants for two reasons. First, this is an inter partes proceeding of which Defendants are the only proper adversarial party against whom Pro–Football can bring suit. Second, Defendants' interest in the outcome of the TTAB proceeding necessarily makes them parties in interest before this Court.

### i. Inter Partes Proceeding

■ The Court finds that the civil case in question is an inter partes proceeding. A cancellation proceeding is necessarily an inter partes proceeding. *See Rosenruist–Gestao E Servicos LDA v. Virgin Enters. Ltd.,* 511 F.3d 437, 443 n. 4 (4th Cir.2007) ("[a]n inter partes proceeding ... is an adversarial action between parties" that "can take the form of ... a cancellation proceeding"); The United States Trademark Law Rules of Practice & Federal Statutes § 2.145 ("[a]n applicant for registration, or any party to an interference, opposition, or cancellation proceeding or any party to an application to register as a concurrent user, [are] hereinafter referred to as inter partes proceedings").

Section 1071(b)(2) of the Lanham Act provides that "[t]he Director shall not be made a party to an inter partes proceeding under this subsection." Section 1071(b)(4) provides "[w]here there is an adverse party, such suit may be instituted against the party in interest as shown by the records of the [USPTO] at the time of the decision complained of." Therefore, it can be inferred that when a party brings a civil suit to review an inter partes proceeding, an adversarial party in interest and not the Director is the proper defendant in such a suit.

Defendants contend that because they and Pro–Football are not ordinary "adverse parties ... claiming rights to the same or similar trademarks," they are not parties in interest in this case. (Doc. 19 at 13.) Defendants therefore imply that the instant case is not adversarial in nature and is thus more akin to an ex parte proceeding than a inter partes proceeding. *Id.*

The Court is not persuaded by this argument. There is little room to argue that a cancellation proceeding is ex parte. This assertion is clearly contrary to the generally accepted definition of an inter partes proceeding. Further, Defendants were the sole representatives on behalf of the petition for cancellation, were listed as the adverse parties, and were heavily involved in the proceedings before the TTAB. (Doc. 25 at 16.) Defendants "produced discovery, sat for depositions, participated in TTAB conferences, submitted more than 7,000 pages of purported evidence with their Notice of Reliance, filed trial briefs, filed and opposed motions, and appeared at an oral hearing before the TTAB." *Id.* Based on these facts Defendants are clearly adverse parties listed as "the part[ies] in interest as shown by the records of the [USPTO]."

Interpreting the clear language of § 1071, Pro–Football properly brought this case against Defendants. A cancellation proceeding is necessarily an inter partes proceeding; and the proper defendant in a review of such proceeding is the adverse and interested party recognized by the USPTO. While this should end the dispute, Defendants contend that they are not "parties in interest" and therefore a civil action under § 1071(b)(4) cannot be properly brought against them.

### ii. Parties in Interest

The Court finds that Defendants are "part[ies] in interest" in this proceeding. Section 1071(b)(4) of the Lanham Act provides that "[w]here there is an adverse party, . . . a suit may be instituted against the party in interest as shown by the records of the [USPTO] at the time of the decision complained of, but any party in interest may become a party to the action." § 1071(b)(4). However, "where there is no adverse party, a copy of the complaint shall be served on the Director." § 1071(b)(3).

■■■ A party in interest does not have to demonstrate proprietary interests in the mark; it must only demonstrate a direct and personal stake in the outcome. *See Jewelers*, 823 F.2d at 493 (finding a "real interest" in a mark's registration can be shown "without proprietary rights in the mark or without asserting that it has a right or has an interest in using the alleged mark"); *Ritchie*, 170 F.3d at 1095 (finding "real interest" is shown by "a direct and personal stake in the outcome" or a "legitimate personal interest."); 15 U.S.C. § 1064 (delineating a petitioner for cancellation of a trademark must demonstrate that it has a real interest in the outcome, and reasonably believes that the mark has caused or will cause damage).

Relying heavily on inapplicable precedent, Defendants contend that they are not parties in interest in this suit. First, Defendants rely on, *3V, Inc. v. CIBA Specialty Chemicals Corporation*, 587 F.Supp.2d 641 (D.Del.2008), patent law precedent. In this case, 3V and CIBA claimed the same invention in their patents. *Id.* at 642. The Board of Patent Appeals and Interferences found that CIBA established priority of invention over 3V on some patent claims and rendered other CIBA claims unpatentable. *Id.*

3V initiated a civil action against CIBA under 35 U.S.C. § 146 seeking review of the priority determination. *Id.* CIBA filed a cross-claim on the unpatentability determinations. *Id.* As a result of negotiations, 3V dedicated "all interest in the patent to the public," by disclaiming its interest in the claimed invention. *Id.* at 645, 647. Accordingly, 3V moved to dismiss the claim; CIBA opposed this dismissal. *Id.* at 647. The Court dismissed the claim on the grounds that 3V was not a "party in interest" against which a civil action under 35 U.S.C. § 146 can be brought because it had no "articulable reason to participate in the dispute . . . where 3V's disclaimer [left 3V with] no possibility . . . [of] equitable interest that would justify it remaining in the case as a 'proper party.'" *Id.*

The Court is not persuaded by this precedent for two reasons. First, *3V*, is a patent proceeding and therefore has no bearing on the trademark proceeding before this Court. Second, the court in *3V* found that 3V was not a party in interest on the grounds that 3V *disclaimed* its interest in the claimed subject matter, therefore rendering its interest to the public. Here, Defendants maintain their interest from the TTAB proceeding. They have not withdrawn their petition for cancellation and continue to allege that they are damaged by the registration of the REDSKINS marks.

Second, Defendants rely on trademark precedent, *Hans C. Bick, Inc. v. Watson*, 253 F.2d 344 (D.C.Cir.1958), to support their assertion that they are not parties in interest and claim that Pro–Football's dispute is actually with the Director of the USPTO. In *Bick*, three companies petitioned for the cancellation of Bick's trademark granted by the Commissioner of Patents. Bick filed a civil action against the Commissioner under 35 U.S.C. § 145. The Commissioner moved to dismiss the

complaint under § 146. *Id.* at 345. The D.C. Circuit denied the motion and found that the petitioners were not a "party in interest" under § 146 because "such a dispute clearly is primarily between [Bick] and the Commissioner." *Id.* at 346.

The Court is also not persuaded by this precedent. The D.C. Circuit decided *Bick* under the Patent Act, which permitted the Commissioner of Patents to be named a party to a civil action. *Bick* was decided before the 1962 amendment to the Lanham Act which provides that the Director cannot be made a party to an inter partes proceeding. Therefore, the *Bick* court's interpretation of the statutory language cannot be applied to this case where that Court made its determination in consideration of the Commissioner being a statutorily acceptable alternative to the adverse party in the case. *See* McCarthy § 21:24 (describing *Bick* as "aberrational" where "the court strove mightily to classify the case as review of an ex parte decision, such a result probably [being] impossible [today] since the 1962 amendment").

The Court finds that Defendants' claim of disparagement before the TTAB constitutes a direct and personal stake in the outcome of the appeal before this Court. Defendants have not provided a sufficient reason why they should not be considered parties of interest in this case. Merely pointing out that Defendants have not used the registered marks and have no legal or economic interest in the marks does not absolve them of *any* interest in the case. Further, the TTAB's finding that Defendants presented a legitimate personal interest sufficient to proceed with the cancellation proceeding presents a legitimate personal interest sufficient to satisfy 15 U.S.C. § 1071. Defendants show no reason why their interest would cease to exist considering reversal of the TTAB's cancellation of the REDSKINS marks

would subject Defendants to the very harm they sought to eliminate by filing the petition. Accordingly, Defendants' Motion to Dismiss Pro–Football's claim is DENIED.

Were the Court to grant Defendants' Motion to Dismiss and allow their dismissal from this action, four improper implications would result. First, granting Defendant's motion would deprive Pro–Football of the opportunity to review the TTAB's decision, therefore, evading review by an Article III court. Second, granting Defendant's motion would be contrary to the statutory scheme provided by 15 U.S.C. § 1071 which gives either party in a cancellation proceeding the opportunity to review a TTAB decision before a United States District Court. Third, a grant of Defendant's motion would mean that the Director is the only proper party for any judicial review of a TTAB cancellation proceeding contrary to the explicit terms in the statute. Finally, granting Defendant's Motion to Dismiss will improperly make the cancellation proceeding before the TTAB a final decision. The Court therefore finds that it would be contrary to the law to dismiss this case and allow Defendants' dismissal from this action.

## V. CONCLUSION

The Court **DENIES** Defendants' Motion to Dismiss in its entirety. First, 15 U.S.C. § 1071 provides review of a Trademark Trial and Appeals Board's decision in the Federal Circuit or a District Court, and any meritorious interest brought before an administrative proceeding, must carry over into a review of said proceeding. Second, the prior proceeding before the TTAB was an inter partes proceeding where Defendants were the sole adverse parties. Third, Defendants' petition for cancellation evidenced that Defendants have a legiti-

mate direct and personal interest in the registration.

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Blackhorse's Motion to Dismiss (Doc. 18) is **DENIED.**