Shannon WYNNE, Plaintiff,

v.

I.C. SYSTEM, INC. and First Point Collection Resources, Inc., Defendants.

Civil Action No. 2:15cv121.

United States District Court, E.D. Virginia, Norfolk Division.

Signed July 23, 2015.

Eric Leckie, The Law Offices Of Eric Leckie, PLLC, Norfolk, VA, Michael Frederick Cardoza, The Cardoza Law Corporation, San Francisco, CA, for Plaintiff.

Alan Durrum Wingfield, Harrison Scott Kelly, Troutman Sanders LLP, Richmond, VA, Andrew Brian Pittman, Ethan G. Ostroff, Troutman Sanders LLP, Virginia Beach, VA, for Defendants.

## *MEMORANDUM ORDER*

REBECCA BEACH SMITH, Chief Judge.

This matter comes before the court on the Defendants' Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction ("Motion"), ECF No. 19, and accompanying Memorandum in Support, ECF No. 20, filed on June 10, 2015. The

Plaintiff filed her Response to the Motion on June 22, 2015, ECF No. 21, and the Defendants filed a Reply on June 29, 2015. ECF No. 22. The matter has been fully briefed and is ripe for review. For the reasons that follow, the Defendants' Motion is **DENIED** in part and **GRANTED** in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because this matter arises from a motion for judgment on the pleadings under Rule 12(c) and to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the sparse facts that are alleged in the Complaint are assumed to be true and viewed in the light most favorable to the Plaintiff.[1] The Plaintiff alleges, in essence, that the Defendants harmed her by attempting to collect a debt that she was not legally obligated to pay.

The Plaintiff, Shannon Wynne, is a resident of the Commonwealth of Virginia. Compl. ¶ 3. At some unspecified time, she incurred a debt to Branch Banking & Trust Bank ("BB & T") in the form of a personal checking account overdraft. *Id.* ¶ 6. The Plaintiff does not allege that she ever repaid the debt. BB & T attempted to collect the debt through the legal process, but the Circuit Court for the City of Virginia Beach found for the Plaintiff in this matter on April 24, 2013. *Id.* ¶ 7. It is not clear from the pleadings why the debt was not collectible through judicial means.

The Defendants are both corporations in the business of collecting debts. *Id.* ¶¶ 4–5. Defendant I.C. System, Inc. ("I.C. System") is a Minnesota corporation, and Defendant First Point Collection Resources, Inc. ("First Point") is a North Carolina corporation. *Id.* After BB & T failed to collect the debt from the Plaintiff judicial-

---

1. *See infra* Parts II and III.

ly, the Defendants undertook non-judicial attempts to collect it. *Id.* ¶ 8. The Plaintiff has not specified what non-judicial means the Defendants used to try to collect the debt, but the Complaint alleges that the Defendants misrepresented the character, amount, or legal status of her debt, which caused her "actual and statutory damages." *Id.* ¶¶ 10, 13, 18, 23. The Plaintiff has brought claims against both Defendants under 15 U.S.C. § 1692 *et seq.*, the federal Fair Debt Collection Practices Act ("FDCPA"); and against Defendant First Point under N.C. Gen.Stat. § 58–70–90 *et seq.*, the North Carolina Collection Agency Act ("NCCAA").[2]

The Plaintiff filed her Complaint on March 23, 2015. ECF No. 1. Thereafter, on May 5, 2015, each Defendant served the Plaintiff with an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. Mem. Supp. at 3.[3] The two Offers of Judgment were each "for damages in the aggregate amount of $2,500," as well as costs and reasonable attorney's fees. *Id.* The Plaintiff declined the two Offers of Judgment. *Id.*

■ The Defendants then filed the instant Motion, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings; and, in the alternative, under Rule 12(b)(1), to dismiss the case for lack of subject matter jurisdiction. As a threshold matter, the court must first address the Defendants' arguments under Rule 12(b)(1), because "subject-matter jurisdiction is a necessary prerequisite to

any merits decision by a federal court." *Constantine v. Rectors & Visitors of Geo. Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94, 118 S.Ct. 1003 (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). "Thus, a federal court necessarily acts *ultra vires* when it considers the merits of a case over which it lacks subject-matter jurisdiction." *Constantine*, 411 F.3d at 480 (citing *Steel Co.*, 523 U.S. at 101, 118 S.Ct. 1003).

## II. SUBJECT MATTER JURISDICTION

■ On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982) ("The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction.")).

■ There are two ways in which a defendant may present a Rule 12(b)(1) motion. First, a defendant may attack the complaint on its face, when the complaint

---

**2.** The Plaintiff refers to the North Carolina law as the "North Carolina Fair Debt Collection Practices Act," Compl. ¶ 1, but there is no law by that name. The Defendants call it the "North Carolina Debt Collection Act" ("NCDCA"), *see* Mem. Supp. at 1, which does exist and contains similar provisions to the NCCAA, but is codified at N.C. Gen.Stat. § 75–50 *et seq.* The NCDCA expressly does *not* apply to those entities regulated by the NCCAA, i.e., collection agencies such as the

Defendants. *See* N.C. Gen.Stat. § 75–50(3). Accordingly, the court will refer to Counts Three and Four of the Complaint as being brought under the NCCAA.

**3.** Rule 68 provides that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R.Civ.P. 68(a).

"fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. In that case, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*

Alternatively, a Rule 12(b)(1) motion to dismiss may challenge the existence of subject matter jurisdiction over the case, apart from the facts alleged in the pleadings. *Pro–Football, Inc. v. Blackhorse*, 62 F.Supp.3d 498, 502 (E.D.Va.2014) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995); *White v. CMA Constr. Co.*, 947 F.Supp. 231, 233 (E.D.Va. 1996)). "In such a case, the trial court's 'very power to hear the case' is at issue." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The district court "may then go beyond the allegations of the complaint" to determine independently the existence of jurisdiction. *Adams*, 697 F.2d at 1219.

The Defendants' challenge to subject matter jurisdiction falls into the latter category, as they argue that their Rule 68 Offers of Judgment, which the Plaintiff rejected, render Counts One and Two of the Complaint, the Plaintiff's FDCPA claims, moot. Mem. Supp. at 11–13. The Defendants assert that they offered the Plaintiff more than the full amount of damages to which she can claim entitlement; therefore, the Plaintiff could have obtained, through acceptance of the offer, all she could have hoped to obtain through litigation. *Id.* at 13. Thus, the Defendants argue, there is no live controversy remaining, and the action pending before the court has become moot. *Id.*

The Court of Appeals for the Fourth Circuit has recognized that the "doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction" under Article III, and that "a case is moot when ... the parties lack a legally cognizable interest in the outcome." *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir.2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). A claim becomes moot "when the claimant receives the relief he or she sought to obtain through the claim." *Simmons v. United Mortg. & Loan Inv.*, 634 F.3d 754, 763 (4th Cir.2011) (internal citation omitted). Thus, "[w]hen a Rule 68 offer unequivocally offers a plaintiff all of the relief she sought to obtain ... the offer renders the plaintiff's action moot." *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir.2012) (internal quotation marks omitted). However, an incomplete offer of judgment, one that does not meet the plaintiff's full demand for relief, does not moot the plaintiff's claims. *Id.* at 371–72; *see also Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir.2013) ("To moot a case or controversy between opposing parties, an offer of judgment must give the plaintiff *everything* he has asked for as an individual.... An offer limited to the relief the *defendant* believes is appropriate does not suffice.") (emphasis in original); *Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1167–68 (11th Cir.2012) ("Because the settlement offers were not for the full relief requested, a live controversy remained over the issue of a judgment, and the cases were not moot."); *Gates v. Towery*, 430 F.3d 429, 431–32 (7th Cir.2005) ("A defendant cannot simply assume that its legal position is sound and have the case dismissed because it has tendered everything it *admits* is due. Mootness occurs when no more relief is possible.") (emphasis in original).

In this case, the Plaintiff alleges that the Defendants' violations of the FDCPA entitle her to "actual and statutory damages ... as well as reasonable at-

torney's fees and costs." Compl. ¶¶ 11, 14. The Defendants' Offers of Judgment were each in the amount of "Two Thousand Five Hundred Dollars and 00/100 Cents ($2,500.00)," as well as "Plaintiff's costs and reasonable attorney's fees incurred by Plaintiff in this action." Exs. A & B to Mem. Supp. Thus, had the Plaintiff accepted the Offers of Judgment, she would have collected a total of five thousand dollars ($5,000.00) in damages, as well as reasonable attorney's fees and costs.

The FDCPA authorizes statutory damages in "any action by an individual" of up to one thousand dollars ($1,000.00) total. 15 U.S.C. § 1692k(a)(2)(A).[4] The Offers of Judgment, therefore, exceeded the maximum amount of *statutory* damages the Plaintiff could have been awarded at trial, on her FDCPA claims, by four thousand dollars ($4,000). However, the FDCPA "places no similar statutory cap on a plaintiff's actual damages, *see* [15 U.S.C.] § 1692k(a)(1)," and in this case, the Plaintiff "sought an unspecified award of actual damages in her ... complaint." *Warren,* 676 F.3d at 371.

The Defendants contend that the Plaintiff is not entitled to actual damages because she has alleged "absolutely no factual matter in support of her claim for actual damages," and therefore, the court "lacks power to grant Plaintiff actual damages." Mem. Supp. at 11. This argument conflates two separate issues: (1) the merits, whether the Plaintiff has sufficiently stated a claim; and (2) jurisdiction, whether the court has the power to reach the merits of the Plaintiff's claim. The Supreme Court has clarified the distinction, finding that:

Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which [the Plaintiff] could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.

*Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Accordingly, whether the Plaintiff has sufficiently pleaded her actual damages is a different inquiry from whether the court has jurisdiction. The court will therefore consider this issue as part of the Defendant's argument in support of judgment on the pleadings.[5]

Of course, if the Plaintiff had "made a specific demand in [her] complaint for actual damages and the defendants offered that amount or more, the offer[s] of judgment would have mooted [her] action." *Warren,* 676 F.3d at 372 (citing *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 573 (6th Cir.2009)). However, the Plaintiff presumably seeks to recover more than the amount offered to her, and at this early stage of the proceedings, the record is insufficient to determine that the Plaintiff could not possibly do so if her case were to proceed to trial on the merits. *See id.* at 372. "Reasonable though the defendants' offer may have been (and may still prove to be), the disparity between what they offered and what the plaintiff sought generally will preclude a finding of mootness." *Hrivnak,* 719 F.3d at 568. Thus, the Plaintiff maintains a personal stake in the outcome of the action, and a live controversy remains. The Rule 68 Offers of Judgment did not render the Plaintiff's case moot, and accordingly, the Defendants' Motion is DENIED to the extent it seeks dismissal of the Plaintiff's

4. The NCCAA is significantly more generous to plaintiffs, allowing maximum civil penalties of up to four thousand dollars ($4,000.00) *per*

*violation* of the Act. *See* N.C. Gen.Stat. § 58–70–130(b).

5. *See infra* Part III.

FDCPA claims for lack of subject matter jurisdiction.

## III. JUDGMENT ON THE PLEADINGS

The court now turns to the merits of the case at this juncture. When analyzing a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard as applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir. 1999). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.,* 741 F.3d 470, 474 (4th Cir.2014) (citing *Butler v. United States,* 702 F.3d 749, 752 (4th Cir.2012)). Thus, to survive a Rule 12(c) motion, the allegations must "advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir.2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The claim for relief must be plausible on its face, meaning that the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

Because the court decides a Rule 12(c) motion employing the same standards that govern Rule 12(b)(6) motions, the court may, in its discretion, treat the Defendants' Motion for Judgment on the Pleadings "as one for failure to state a claim under Rule 12(b)(6) and dismiss [the Complaint] without prejudice," if appropriate. *Pruett v. U.S. Bank Nat'l Ass'n,* No. 1:12cv6, 2012 WL 5465554, at *2 (W.D.Va. May 4, 2012) (citing *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1038 (6th Cir. 1979); *N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co.,* 740 F.Supp.2d 694, 703–04 (M.D.N.C.2010)); *see also* 1 Motions in Federal Court § 5:158 (3d ed.) ("The relief granted on a motion for judgment on the pleadings under FRCP 12(c) may depend on the grounds asserted in the motion. For example, if the motion asserts the failure to state a claim upon which relief can be granted, the court may grant a dismissal of the complaint under Rule 12(b)(6) rather than a judgment on the pleadings under Rule 12(c).").

### A. Counts One and Two—The FDCPA Claims

The Defendants assert that the Plaintiff has failed to allege a cognizable claim under the FDCPA, *see* Mem. Supp. at 4–6, which aims to curtail "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The FDCPA "forbids the use of 'any false, deceptive, or misleading representation or means' in debt collection, and provides a non-exhaustive list of prohibited conduct." *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 135 (4th Cir.1996) (quoting 15 U.S.C. § 1692e). To state a sufficient claim for relief under the FDCPA, a plaintiff must assert facts that, if proven, would show (1) that she has been the object of collection activity arising from consumer debt, (2) that the defendant is a debt collector, as defined under the FDCPA, and (3) that the defendant has engaged in a prohibited act or omission. *See Ruggia v. Washington Mut.,* 719 F.Supp.2d 642, 647 (E.D.Va. 2010) (citing *Dikun v. Streich,* 369 F.Supp.2d 781, 784–85 (E.D.Va.2005)).

The parties do not dispute that the Plaintiff was the subject of a collection activity arising from a consumer debt, nor

that the Defendants both qualify as "debt collectors," as defined in 15 U.S.C. § 1692a(6). Therefore, the Motion turns on whether the pleadings sufficiently allege that the Defendants engaged in an act or omission that the FDCPA prohibits.

The Plaintiff alleges in Counts One and Two that the Defendants violated 15 U.S.C. §§ 1692e(2)(A) and 1692f(1), respectively. Compl. ¶¶ 9–14. Pursuant to § 1692e(2)(A):

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... The false representation of ... the character, amount, or legal status of any debt....

15 U.S.C. § 1692e(2)(A). Section 1692f(1), in turn, prohibits a "debt collector" from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692(f)(1).

The Plaintiff has not identified any facts relating to the Defendants' alleged violations of these provisions. She does not explain by what conduct, or to whom, the Defendants made any "false representation of the character, amount, or legal status of any debt" in connection with the collection of the debt at issue. She does not allege why collection of the debt, though not available through judicial process, was not legally permitted via non-

judicial means. She does not allege what form of "actual damages" she has suffered. The Plaintiff asserts merely that the Defendants knew, or should have known, that the debt was not judicially enforceable, and attempted to collect the debt anyway. Compl. ¶ 8. Standing alone, such allegations do not give rise to a colorable claim under the FDCPA. *See Gray v. Wittstadt Title & Escrow Co.,* No. 4:11cv111, 2011 WL 6139521, at *3 (E.D.Va. Nov. 28, 2011); *Sunga v. Rees Broome, P.C.,* No. 1:09cv1119, 2010 WL 1138319, at *3 (E.D.Va. Mar. 18, 2010); *see also Mavilla v. Absolute Collection Serv., Inc.,* 539 Fed. Appx. 202, 207 (4th Cir.2013) (noting that "placing phone calls and mailing letters [ ] are completely legal debt collection practices," even if mistakenly targeted at someone who does not actually owe the debt). The rest of the Complaint simply parrots the language of the statute, with no factual allegations to support the conclusion that the Defendants falsely represented "the character, amount, or legal status of any debt," or attempted to collect "amounts not permitted by law." *Id.* ¶¶ 10, 13. These unsupported assertions are the type of "[t]hreadbare recitals of the elements of a cause of action" that do not state a cause of action on which the court can grant relief. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Even accepted as true, the Plaintiff's "formulaic recitation of the elements of a cause of action will not do," *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, and thus the Defendants are entitled to dismissal of Counts One and Two of the Complaint.[6]

---

6. The Defendants argue that Count Two should be dismissed because it is duplicative of Count One; i.e., because the Plaintiff cannot recover damages for the same conduct under both § 1692e and § 1692f. Mem. Supp. at 6. That may be so, but it is not a reason to dismiss Count Two at this juncture. The Plaintiff is permitted to plead "2 or more statements of a claim or defense alternatively or hypothetically, either in a single count ... or in separate ones." Fed.R.Civ.P. 8(d)(2). Moreover, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed.R.Civ.P. 8(d)(3). The court may not dismiss Count Two simply because the Plaintiff could not ultimately recover from the Defendants for the same conduct under both provisions of the FDCPA. *See*

The Defendants assert that Counts One and Two of the Complaint should be dismissed with prejudice because the Defendants were permitted to collect the Plaintiff's debt, which she admits she incurred and does not allege that she repaid. Mem. Supp. at 5. However, the sparse allegations in the Complaint, and the minimal record at this early stage, are insufficient to allow the court to determine in what manner the Defendants attempted to collect the debt, and whether the FDCPA in fact permitted them to do so.

Accordingly, the court exercises its discretion and hereby **DISMISSES** Counts One and Two without prejudice.

### B. Counts Three and Four—The NCCAA Claims

Turning to the Plaintiff's claims under the NCCAA, the Defendants argue that Counts Three and Four should be dismissed because the Plaintiff—who resides in Virginia and has not alleged that she ever lived in North Carolina—lacks standing to bring a claim under the NCCAA. Mem. Supp. at 7. Standing is an inquiry that is "generally associated with Civil Procedure Rule 12(b)(1) pertaining to subject matter jurisdiction." *CGM, LLC v. BellSouth Telecomm., Inc.*, 664 F.3d 46, 52 (4th Cir.2011) (citing *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005)). "That is because 'Article III gives federal courts jurisdiction only over cases and controversies,' and standing is 'an integral component of the case or controversy requirement.'" *Id.* (citing *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir.2006)).

■ However, the Defendants correctly advance this argument in support of judgment on the pleadings, which is a mer-

its-based inquiry, *see Bell*, 327 U.S. at 682, 66 S.Ct. 773, "because the standing inquiry at the heart of this case is *statutory standing*—a concept distinct from Article III and prudential standing." *CGM*, 664 F.3d at 52 (emphasis added). Statutory standing, "which is perhaps best understood as not even standing at all," focuses on "whether the plaintiff 'is a member of the class given authority by a statute to bring suit.'" *Id.* (citing *In re Mutual Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008)).

■ Thus, while constitutional and prudential standing implicate the power and propriety of the court to resolve a claim, the inquiry into statutory standing looks at "whether [the legislature] has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Id.* (quoting *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 295 (3d Cir.2007) (emphasis in original)). The Fourth Circuit accordingly treats a dismissal for lack of statutory standing "effectively the same as a dismissal for failure to state a claim." *CGM*, 664 F.3d at 52 (citation omitted). The court may, therefore, properly consider this argument in support of judgment on the pleadings with respect to Counts Three and Four of the Complaint.

■ It has long been the case that "[l]egislation is presumptively territorial and confined to limits over which the lawmaking power has jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195, 39 S.Ct. 84, 63 L.Ed. 200 (1918) (citation omitted). "The principle that state laws may not generally operate extraterritorially is one of constitutional magnitude. One state may not 'project its legislation' into anoth-

---

*Pallone v. Marshall Legacy Inst.*, 97 F.Supp.2d 742, 744 n. 2 (E.D.Va.2000) (rejecting defendant's argument that one of plaintiff's claims was "not necessary because plaintiff's claims 'overlap'" and noting that the fact of "over-

lapping" claims "is not relevant on a motion to dismiss, because under the Federal Rules, plaintiff is free to state claims in the alternative.").

er." *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489–90 (4th Cir.2007) (quoting *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521, 55 S.Ct. 497, 79 L.Ed. 1032 (1935)); *see also Bigelow v. Virginia*, 421 U.S. 809, 822–23, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) ("The Virginia Legislature could not have regulated the advertiser's activity in New York, and obviously could not have proscribed the activity in that State."). The courts of North Carolina have long adhered to this rule as well:

> The law is unmistakably clear that the Legislature has no power to enact statutes, *even though in general words*, that can extend in their operation and effect beyond the territory of the sovereignty from which the statute emanates.... The presumption is always against any intention to attempt giving to the act an extraterritorial operation and effect.

*McCullough v. Scott*, 182 N.C. 865, 109 S.E. 789, 796 (1921) (internal quotation marks omitted) (emphasis added); *see also In re De Ford*, 226 N.C. 189, 37 S.E.2d 516, 518 (1946) ("It is axiomatic that courts have no extraterritorial jurisdiction."). Thus, even though the NCCAA lacks any statutory language that explicitly restricts its application to North Carolina residents, it does not provide a private cause of action for someone who has never even resided in the state. *See Sawyer v. Mkt. Am., Inc.*, 190 N.C.App. 791, 661 S.E.2d 750, 753–54 (2008) (citing *McCullough*, 109 S.E. at 796) (holding that North Carolina's labor laws did not provide a private cause of action to a non-resident employee of a North Carolina company, who performed all work outside of North Carolina).

Other jurisdictions, including the Fourth Circuit, have come to the same conclusion.

*See Elyazidi v. SunTrust Bank*, 780 F.3d 227, 236–38 (4th Cir.2015) (upholding the dismissal of claims arising under the Maryland Consumer Debt Collection statute for conduct and ensuing harm that "occurred only in [plaintiff's] home state of Virginia"); *see also Highway Equip. Co. v. Caterpillar Inc.*, 908 F.2d 60, 63–64 (6th Cir.1990) (holding that an Illinois statute "was enacted for the protection of Illinois residents only," and could not be applied extraterritorially to an Ohio plaintiff suing an Illinois defendant); *Smith v. Pizza Hut, Inc.*, No. 09–cv–01632, 2011 WL 2791331, at *8–9 (D.Colo. July 14, 2011) ("It is well established that a plaintiff does not have standing to allege claims on his own behalf under the laws of states where he has never lived or resided because he has not suffered an injury under those laws, nor is he protected by those laws.").

Here, the Plaintiff has not alleged that she resided in North Carolina during the time Defendant First Point attempted to collect the debt, nor, in fact, that she has ever lived in North Carolina. Indeed, in her Response to this Motion, the Plaintiff makes no attempt to rebut the Defendants' argument on this point. In light of North Carolina's rules of statutory construction, the court finds that the NCCAA does not have extraterritorial effect, and the Plaintiff does not have statutory standing to avail herself of its protection.[7] The Defendants' Motion for Judgment on the Pleadings is therefore GRANTED as to Counts Three and Four of the Complaint.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is **DENIED**. The Defendants' Motion for Judgment on the Pleadings, analyzed under the standard applied to Rule 12(b)(6) motions to dismiss,[8] is

---

7. It is, therefore, unnecessary to address First Point's arguments that the NCCAA does not prohibit its alleged conduct. *See* Mem. Supp. at 8–9.

8. *See supra* Part III.

**GRANTED** as to Counts One and Two, the FDCPA claims; however, these two counts are **DISMISSED** without prejudice. The Defendants' Motion for Judgment on the Pleadings is **GRANTED** as to Counts Three and Four, the NCCAA claims. In the event that the Plaintiff's pleading deficiencies as to her FDCPA claims might be curable, the court **GRANTS** the Plaintiff leave to file an Amended Complaint, within twenty-one (21) days of entry of this Memorandum Order. The Defendants shall have twenty-one (21) days after the filing of an Amended Complaint to file a responsive pleading. The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to counsel for the parties.

IT IS SO ORDERED.